American Alliance Casualty Company Plaintiff Appellee v. Louis Mercado Defendant Appellant 2026 L. App v. 242194. I'd like the Attorney for the Appellant to introduce him herself first, please. Tracy Robb on behalf of Appellant, Mr. Mercado. Okay, and the Attorney for the Appellee. Good afternoon, Your Honors. Pat Eckler for American Alliance. Okay, generally we'll try to give you about maybe 10-15 minutes to just go with your best foot forward, the best, the highest and best use of your case and the best argument you can make and slip down from there if you want to. We will try not to interrupt you unless we really are inclined to do so because of something that you bring up and we'd like to have the Appellant save some time for rebuttals. So, how much time would you like to save, Ms. Robb? Five minutes, please. Okay, great. Five minutes. And with that, I will tell you that we have, first of all, I'd like to apologize for the mess in back of me. I couldn't open my right Zoom, so I'm sort of winging it here. The that you've cited. So, you don't need to waste a lot of time on that unless it's specifically important to the argument that you're making. So, go ahead. Thank you. May it please the Court, Counsel. We're here today on a question of tardy notice to an insurer by an insured. I'm here to represent the passenger in the automobile owned by the insured who was severely injured in the accident. So, that's his interest in this case. So, we begin with, there's no dispute that the requirement in the policy of the 30-day notice provision was not complied with by the insured, Mr. Aguirre. Where the parties, I think we both agree with that, where the parties diverge is what law applies. American Alliance has argued that if strict compliance is necessary because the provision is unambiguous and therefore no notice within 30 days excuses the insured from coverage. However, we would argue that that approach ignores well-settled Illinois law starting in 1954 with Simmon v. Iowa Mutual and followed up with the Court reaffirming its Simmon decision in Country Mutual v. Lavorsi Marine. The Simmon Court determined that the notice provision is important, but all the facts and circumstances of the case must be looked at in determining whether notice was reasonable or unreasonable. Only where it's unreasonable is the insured excuse from performance under the contract. If the conclusion of, after evaluating all the facts and circumstances, lead to the decision that it was reasonable, then the burden would shift to the insurer to show that it was prejudiced. So, starting there, you have read the briefs. We have fully examined all of the Lavorsi factors. Let me ask you a question. What material fact is in dispute? I'm sorry, I'm struggling hearing. The material fact that is in dispute is on the declaration page. There is a specific instruction at the bottom of the page that says, should you have any questions regarding this declaration, please contact your producer, Cresco Insurance Agency, at the phone number listed above. Welcome to American Alliance Casualty. The dispute is the insured contacted Cresco Insurance Company within three days of the accident. He asked for his... Nothing you've said so far is in dispute. I'm trying to find a material fact that's in dispute. What you read in the... It's there. They don't disagree with that. They don't disagree that he contacted Cresco within three days. What is the material fact in dispute? Well, so what I think that it hasn't been addressed, number one, by the trial court. It was not considered... What is it that hasn't been addressed? I need a material fact that's in dispute. Okay, you said it. I don't know what it is. Well, I believe that there's a conflict with the insurance, with this declaration page, with the instruction on the declaration page and the actual policy, which the preamble reads. There's no conflicting fact. That's what you're saying. The facts are the facts. There's nothing in the facts that's contested. You're contesting the law. Is that it? I'm contesting the application of the law because the court did not evaluate all the facts and circumstances, including the fact that the declaration page directed this insurer to contact the agency. Well, then your objection is a question of law, isn't it? Yes. Okay, so we're not... There's no fact in dispute here. Well, I would disagree because I think the fact that he contacted Cresco... That's a fact. That's not in dispute. What you're saying is you don't like the conclusion that the court draw out for summary judgment. They said there was no questions of fact, and as a matter of law, summary judgment was appropriate for the insurer, correct? Well, correct, but I think that the trial court never considered this fact. They did consider it. They did consider the facts. It's not a disputed fact, right? There is no question of fact. What you're saying is you don't like the conclusion the court drew from the law. Well, no, wait. Wait. I'm hearing her say there's a question of fact whether the deck page, the declaration page, or the policy itself is the one that we should be attention to. That's not a question of fact. That's a question of law. That's a legal question. I think it could be both. Let me ask a question, Ms. Raab. How could it be both? Because if... Well, the application of the law, like I started to say, is American Alliance says you have to have strict compliance with the provision, and I think that by ignoring this direction, instruction on the declaration page, we haven't considered all the facts. Well, that's not... Let me put it a different way. Let's say we agree with you, okay? Let's say that we do not accept the position of the insurance company that strict compliance is required, okay? And that the cases are as you described them, right? And the factors, there's law for the last 50 plus years, right? So let's... We agree. If that's the law, let's... I'm making it based upon assuming you're correct. Okay. So then it's still a question of law whether under these agreed facts, what is reasonableness? Is this reasonable? Is it reasonable? Right. That's... But that's not a question of fact. To me, that's... Because the facts aren't in dispute. It's a question of what is reasonable, which is a legal conclusion under these facts. Okay. So... I mean, if we go with that, then the question becomes, why is it reasonable in this case that nothing happened for two years, the insurance company had no idea about this because all he did was contact a independent broker three days after. Well, because that's the direction on the declaration page. Where is that the direction in the... That direction and it talks about having any questions about the insurance. That doesn't say when you have an accident to contact the agent, does it? In fact, isn't that language directly opposite of that? I agree that there is case law that says a broker is not an agent of the insurance company, but where the declaration page specifically says, if you have questions, call the producer. That's not a question. You just said... You're telling me it's a question whether he had an accident? That's a question? Or is that... No. He's reporting something. So it's not a question. To me, a question has a specific definition. He's not questioning, he's reporting. And he actually did it before, right? So this isn't the first time. And last time he had to speak with the insurance company. So he knew because he had done it before and did it right. Nobody's contesting that. Well, I don't necessarily agree with that. I think that he relied on Cresco the first time who said, oh, you had an accident. You're going to make a claim. You have to call American Alliance. So he called this after this particular accident and Cresco said, okay, great. We'll terminate your premiums. There was no further direction to call American Alliance. And this is a pretty unsophisticated individual whose first language is not English, and he relies on the people in this agency to direct him. And so he called... Is that the law? Tell me a case that says that that is what we have to look at the... What you just said, that he's unsophisticated. I mean, insurance policies in this situation, what you're saying is that the silence of Cresco overrides, acquires prior experience? Well, I would say it's a factor to be considered with all of the other factors. Okay. So one of the factors is his prior experience, which the court considered, and policy language. Should the policy language be considered or not? So the preamble to the policy says the declarations are made a part hereof. So doesn't the inclusion of the declaration with those instructions conflict with the specific notice provision in the policy? And isn't that a question? Isn't that a question of law? Well, I think it's a question of fact whether it conflicts or not. How is that a question of fact? What's the fact that's in question? Well, okay. It's a question of law, but... Well, it is or it isn't, okay? So I'm just asking you the question. But if you want to make the argument it's a question of fact, that's your argument. I'll accept what you say. I'm just questioning you. You tell us which way you're going in this. Well, I think that the fact that you have this direction, he followed the direction and it didn't go further than that. And the declarations are in, are made a part of the policy by the policy terms itself. I think it's a question, it's one of the factors to be considered in the entire case. And my objection was that the trial court never addressed it one way or the other. The trial court never said it doesn't matter or it does matter. And I think that a fair determination of this case must include that fact. So, Ms. Robb, if we accept that, that the court was supposed to look at the foreseeing factors here, all the facts are undisputed. So even if the trial court did not look at those factors, we can. Yes. In other words, there does not need to be an evidentiary hearing because the facts themselves are undisputed. The facts are undisputed, correct. But I think, like I said, I'm just going to reiterate what I said. I think it creates confusion and isn't that confusion a factor to be considered? So, that would go to, what, factor two, the insured sophistication, factor one, the language of the notice provision. Where would this go? So, notice definitely, I mean, if you, you know, well, that's the question. Is notice under the terms of this, the instructions on this declaration page that he called CRESCO within three days, did they receive notice given that specific instruction? But the policy notice provision is very, very clear. It is. The policy notice provision says, as a condition precedent to coverage, you need to give notice to American Alliance at this address within 30 days. Correct. That's what the provision says. Correct. So, the provision that you're pointing us to says, if you have any questions, call CRESCO, welcome to American Alliance. The insurance card says American Alliance. The notice provision says go to American Alliance. It doesn't say call CRESCO. So, you know. Okay. So, those are the facts that we have. That is correct. But that is just one fact to be considered. So, the other factors are that he was T-boated in an intersection. As I said, he was a unsophisticated individual, and he did not believe that his coverage would be impacted one way or another, because it was not his fault. And he reiterated that in his deposition several times. He was not aware that his coverage would be implicated in any way. He testified that he didn't know his passenger could sue him. So, I think the totality of the facts. He doesn't need to know that under LaForce. He needs to know whether there was an occurrence. Any person, sophisticated or not, knows if they get T-boned or if it's totaled, there's an occurrence where you would have an obligation to notify your insurance company, even if you subjectively believed I wouldn't be sued or for whatever reason. Correct? And not to mention, he had experience once before. Yes, but that goes back to the direction to call Cresco, because he relied on Cresco to direct him in both of those circumstances. And that's why I'm saying all of these facts go together. You don't become sophisticated, having been unsophisticated by one encounter with an accident. In other words, just because he had one accident before and was told to call American Alliance, he assumed and he testified to the fact that if he needed to call American Alliance, he assumed that Cresco would direct him to do so again. Turning to the fundamental question, why should we ignore the clear notice language that says 30 days? That's not unambiguous. I mean, that's not ambiguous. So, why should we just not follow? Because Stemmen and Lavorsi require an examination of all effects and circumstances. But those were not specific 30-day policies. Those were policies that were described as prompt, reasonable, soon as practical. That's what those notice provisions said. Here, it's as clear as day. American Alliance said 30 days. Well, there were some of the other cases that involved auto policies with 30-day notice, the direct auto case that we cited. And Lavorsi and Stemmen were applied under those circumstances too, particularly because of the fact that it's motor vehicle coverage mandated. And Stemmen lays out the public policy argument supporting an expanded investigation into the facts and circumstances leading to tardy notice. So, I think the public policy argument is why you go outside the 30-day limitation in a motor vehicle case. Ms. Rupp, if you could wrap it up, please. I apologize. I didn't hear you. I said, if you could wrap it up, please. Okay. I think I've said what I need to say. I'll keep my five minutes for rebuttal. Thank you. Thank you. Mr. Eckler? Thank you. And may it please the Court, Pat Eckler for American Alliance Casualty Company. This Court should affirm the summary judgment graded in favor of American Alliance because, as counsel has conceded a moment ago, the clear and unambiguous provision of the policy was violated when American Alliance indisputably did not receive any information about the underlying accident for more than two years. The provision at issue, Your Honor, Justice Hyman, you asked about whether there's a material fact. Counsel has conceded there is no material fact. She has pointed repeatedly, counsel has, to the language of the declaration page, which talks about questions about the declaration. The policy itself speaks specifically about what has happened. And gets to your point, Justice Gamrath, about when there's an accident, occurrence, or loss. And it says you must give notice to American Alliance. Unlike any other provision reviewed by an Illinois court in a published decision, Simmon, Lavorsi included, that has looked properly at that provision because the issue was was not pressed in direct auto versus O'Neill. They relied upon the Lavorsi factors in that case. And they had all kinds of problems and the reasons we set that out in our brief as to they gave an improper address in that case as to where the insurance company was located. That is not the facts of this case. When you look at how, this is a case where the unambiguous provision was not complied with. And it cannot be the law of Illinois that an insurance company goes from having an ambiguous provision to having an unambiguous provision and finds itself in a worse position than when it had an unambiguous, when it had an ambiguous provision. How would you be disadvantaged? How would you be in a worse position? Because Lavorsi is applied to those cases that you term ambiguous. I assume that you're talking about prompt notice or as soon as practicable. If we apply those factors to your policy, how would you be in a worse position? Our frontline argument, Your Honor, is you don't reach that because Lavorsi is filling in a gap because of the ambiguity, because of the ambiguity in the policy. If you get past that argument, I don't think you should. But if you do and you get to the Lavorsi factors, the Lavorsi factors, each of them, and we walk through them in our brief, all favor us, starting with the language of the policy, the sophistication of Mr. Aguirre. How sophisticated does one have to be? As you pointed out a moment ago, Your Honor, that a personal lines policy of automobile insurance is implicated when they get into an automobile accident. And it's a key language in the policy that Ms. Rob wants to read out of the policy that says, regardless of fault, it's in the provision. It doesn't matter if it was his fault. And let me add one other thing. On that declaration page that Ms. Rob wants to look at, there was medical payments coverage. There was coverage available for Mr. Aguirre had he chosen to access it. That is, he bought $5,000 in MedPay coverage. It's there. So he contacted Cresco, as Your Honor, Justice Hyman pointed out, and that he had done this before. Any error by Cresco is charged to Mr. Aguirre, not to American Alliance. For all the reasons we've set forth factually, he was well aware he had bought policies from First Chicago through Cresco before he purchased the American Alliance policies. He purchased a policy from American Access, I after, during the two-year period, after this accident and the American Alliance policy went away. So he was well aware of what Cresco's role was as a broker. When you say well aware, how do we know that? Well, Your Honor. When you say well aware, and just because some years before he was told, the reason he contacted the insurance company at that time is he was told to do so. This time, they didn't say anything. There was silence. And I think you have to concede, you would concede, wouldn't you, that he's unsophisticated? No, I wouldn't, Your Honor, in this context. No, I don't think it's a context thing, because the only thing you have then is the fact that a lot of people have insurance. This is not a person who knows the law, probably hasn't even read the policy. Most people don't. He knows he got this from a broker. He goes up to the broker. The broker doesn't say a thing this time. This is an unsophisticated person. I don't think that's in doubt. I don't think that makes the decision one way or the other, although it's one of the factors that could be considered. But it's one factor. If you don't want to concede it, that's fine. But I think we can say that if he was sophisticated, he wouldn't have been in this position, right? I have several responses, Your Honor. The first is that the error by the broker is chargeable to him because they were plainly acting as a broker. And that was where his, if they didn't tell him, then that's his problem. As to sophistication, I want to give Your Honor an example of what level of sophistication the Supreme Court expects insureds to have because he is, you're right, he probably didn't read the policy. He's charged with having read it though. That is the law. I want to refer the court to American Family v. Crop. In an American Family v. Crop, a family went to AmFam and said they wanted to replace their homeowner's policy with a traveler's policy. And the traveler's policy had what amounted to advertising injury coverage in it. And when their son, after they bought the AmFam policy, defamed someone online, the court said, you are charged with the difference in that policy between the AmFam and the traveler's policy, such that your failure to notice that five years ago means the statute of limitations had run. Now, I dare say, Your Honor, if any one of us had gotten those two policies and were asked to compare them, we wouldn't have found that but that is the level of sophistication that the Illinois Supreme Court expects insureds to have. And this is a far more simple policy. He knew he had been involved in an automobile accident. He called the person from whom he purchased his automobile insurance to cancel his automobile policy. He had received the policy. He had received multiple notices of cancellation that on those notices have my client's name, address, website, phone number. All of that information was provided to him on multiple occasions. He knew who they were. So I push back on it. In this context, you're right. If we're talking about a commercial policy, Your Honor, yes, he's unsophisticated. But when it comes to mandatory personal lines automobile insurance, which he had, and he knew from whom he had purchased it, one does not have to be extraordinarily sophisticated in this context to know whether they, and I would point, Your Honor, to a case that Ms. Rob cited, Berglund, which is a CGL policy and a doctor that owned a paintball facility and someone got hit in the eye and he was a neurosurgeon. So someone that's plainly very sophisticated. And the court would say in that context, we're not so sure if he would know. Here we're dealing with a policy of mandatory minimum limits, personal lines, automobile insurance. It cannot be the case that a person who has such a policy and is involved in an accident, whether it's as severe as this one was, or even a minor one that doesn't know that, hey, I need to call my insurance company. And in this case, he not only called his broker, he had previously done the same thing, contacted his broker and his broker fell down on him. Okay. He previously called his broker and his broker, as Justice Hyman has pointed out, said, oh, you've got to call American. This time the broker didn't do that. So he would just say, okay, I don't have to do it this time because they didn't tell me I have to. And that error, which is an error, is chargeable to Mr. Aguirre because the undisputed facts show that they were a broker acting on his behalf, not acting on American Alliance's behalf. I don't disagree with your honor. Well, the deck page sort of makes it sound like they're acting for Americans since it says welcome to American on the deck page. And it also says, oh, call us if you have any questions. So no, it says, no, your honor, there's a difference between calling them with respect to questions related to the declaration. No, no, that's it. You know what? You said earlier, and I meant to ask you about it. You said the question, the note about calling if you have questions on the deck page is only about questions about the deck page. Well, that makes no sense. If it says, if you have any questions, call Crespo, well. That's not what it says, your honor. Anybody, what's the exact language? It says, should you have any questions regarding this declaration, please contact your producer, your producer, Crespo at the number listed above. Welcome to American Alliance. It is clear in several dimensions. Number one, it says about, it limits questions to the declaration because it's the broker who makes the changes. And I, this is outside the record, but I can, I can speak to how this is done. It is done through the broker. And then it says, contact your producer. Now the term producer is a case law about what a producer is under Illinois law, but that's the license, whether a person is a broker or an agent as defined by the law, they're all producers and that's how they're licensed under the IDFPR. So let's just, can we just circle back, just a question about this 30 days. What if the next round, American Alliance says, you know, 30 days is too long. They should tell us in seven because, you know, they know that they got it hit. Or what if you say 14 is a insured, absolutely bound by that unambiguous provision when they cannot negotiate that with you. In other words, just because American Alliance says it's 30 days, they're stuck with it. I have a couple of responses, your honor. First, that is in our case. And the 30 days, I think, is this, in this case, it's not even close. In this case, it's over two years, which again, I'll, I'll say, let me change this hypothetical. Let's say it was 35 days. Your honor, that means. And I know it's not this case, it's called a hypothetical. So, so answer my hypothetical. It's 35 days. That. What's your position? My frontline position would be the provision should be enforced as written. However, just as I am prepared, I have backup arguments. And my backup argument is go through the, go through the LaVorce factors. And if the LaVorce factors look, if they, if the facts are the same on the LaVorce factors, where you have a person that was undoubtedly knew he'd been involved in an accident and had a prior incident involving this, and on and on, all the factors as we set them up, I think we still win. So I don't think it matters. It, it's a, it's a more difficult case for me. I agree. But I come back to my argument that it cannot be the law. The courts of this state, in fact, the courts everywhere in this country have told insurance companies, write clear, unambiguous provisions. My client did that on what is amongst the most, if not the most fundamental aspect of a policy of liability insurance. When to tell the insurance company what to tell them, when to tell, or I'm sorry, when to tell them what to tell them and how to tell them. They did all of that. That is clear as day. And it can't be the case that they are, that their book is scant in that regard when they do that. And I will add one other thing to go back to answer your question, Justice Gamrath. Hopefully I've answered Justice Hyman's hypothetical, but I want to go back to your hypothetical, your, your comments, Justice Gamrath, with respect to, could we make it seven days? Could we make it 14? The department would have to approve such a change just as they approved this one. Now we didn't get into this. And the reason we didn't get into this is because there isn't a serious argument made here of a violation of public policy. In the opening brief, Ms. Rob argues that you should look at public policy in order to look at prejudice, which was specific. So, so I heard that argument and I understand it. My question though, is if we say 30 days is 30 days, aren't there, isn't there always going to be room for exception? And should we be making exceptions for case X versus case Y, or should it be the same rule? It's either do or die 30 days for everyone, or everyone gets the grace of the Lavorsi factors. Your Honor, the clear law of Illinois is two things. A policy provision that is unambiguous is enforced as written, unless it's violative of public policy. In the circumstances you've posited, there would be defense to contract, impossibility, some sort of excuse defense. If the person's in a coma, something along those lines, all would be perfectly valid defenses to, to a breach of contract claim. Those are available and you don't have to get to the Lavorsi factors. What the Lavorsi court was looking at was a situation where they had an ambiguous provision. They had to fill in the gaps. That's what courts do when they have a condition, or they have a provision rather of a contract that's ambiguous. And so they fill in the gap and the court came up with a multi-factor test to fill the gap. Here, the gap doesn't need filling. The gap's been filled with an unambiguous provision approved by the department. I'm sorry, Your Honor, you broke up. Oh, Neil. I know that there was the wrong address, but why did they not apply it? They didn't talk about public policy. I, Your Honor, I don't know why the court decided O'Neill as it did for several reasons. Number one, it's directly contrary to Lavorsi. It is impossible to square O'Neill with Lavorsi. They referenced Lavorsi, they referenced the factors, then they never analyzed them, the court there. Moreover, in O'Neill, they talk about a material breach. The word material, I went and looked. The word material is neither in the Simmon decision nor in the Lavorsi decision. Prejudice is all over the place, but not material. And what we're talking about is whether the notice was reasonable or unreasonable. In the case of O'Neill, it was impossible based upon the policy for the insured to give notice to the insurance company because they'd given them the wrong address on the policy, contrary to regulation. And when you do that, there's a consequence. Those are not the facts here. In that case, the insured was diligent. The lawyer tried. He sent the letters to the address that he had. He wasn't able, not surprisingly, to get in touch with them. So I think O'Neill, I don't think you can square the analysis, or as I would say, lack of analysis with Lavorsi. And you don't have to, because in that case, the insurance company did not rely upon the 30-day provision. I would add, Your Honor can look at the, or listen to the oral argument. They conceded it. We're not conceding it. We're standing on it. And we're standing on it for two reasons. Number one, our frontline argument, but number two, with respect to the Lavorsi factors themselves. I welcome, if you want to go through the Lavorsi factors, we can go through them. They all favor us. And just let me ask you, so your position is prejudice doesn't matter. If the notice is not reasonable, then even if the insurance company is not prejudiced, you still win. That's not my position. That's the position of the Supreme Court. They said at pages 316 and 317, where notice is unreasonable, prejudice may be considered, but does not have to be considered. That's what the Supreme Court said, and that's what controls this court. I remember the day Lavorsi came down. I was a very young lawyer, and it was a big deal that the Supreme Court had not adopted the notice prejudice rule. And in the 20 years, intervening 20 years, most of the day, the court still hasn't adopted the notice prejudice rule. And this court is bound to follow Lavorsi. Lavorsi makes it very clear. Now, in this case, the notice came more than two years later, which means if my client wanted to subrogate, they couldn't. The vehicles had been destroyed. They couldn't investigate the vehicles. As Ms. Rob pointed out, Mr. Aguirre was t-boned by, and I think this is in the record, but if it's not, I don't think I'm speaking too far out of the record, that by a person who would run a red light and was drunk. And so those would have been, and they sued Mr. Aguirre anyway, because of the extent of Ms. Rob's client's injuries. My client, if they were going to defend such a case, if they had gotten timely notice, they couldn't do it because of the time that they ended up getting the notice. So they were substantially prejudiced here, but you don't have to reach that. And we don't have to reach that because the other four factors all favor American alliance. And that's what the Supreme Court said in Lavorsi and makes the distinction between a breach of the cooperation clause, which requires prejudice to be shown under cheek, and that's been the law for 50 years. And on the other hand, notice, which has been the law for 70 some years, going back to that prejudice doesn't have to be shown. And that's the distinction that the Illinois Supreme Court has drawn. And that's the distinction that this court, I believe must follow until the court changes it. That's the law. And in this case, the provision here was, I understand if the hypotheticals and they're difficult, I get them, they're supposed to be. But I think that number one, the provision is a period. There is no defense here of excuse. There is no defense of impossibility. In fact, we know he called Cresco shortly after the loss. That's undisputed as Miss Rob said. So he was able to communicate what was going on. He just didn't do it to the right person. And the person he did call didn't do what they had done previously and what they should have done, which was tell him to call American alliance and what the policy told him to do. A policy that he was charged with having read and a policy that is indisputably in this case, unambiguous. It cannot be a situation where an insurance company writes a clear and unambiguous policy. It is violated blatantly, maybe not intentionally, it doesn't matter if it's intent, but violated blatantly and its duties are still not excused. That would be a remarkable outcome for an insurance company to do exactly what it is told to do. Write plain and unambiguous policies. That's what it did. For those reasons, unless the court has any other questions, I would rest on my arguments today in our briefs and ask the court to affirm summary judgment in favor of American Alliance. Thank you. Any other questions for Mr. Eckler? No? Well, thank you, Mr. Eckler. Miss Rob, your five minutes of rebuttal, please. Thank you. My fundamental disagreement with Mr. Eckler's argument is, Simmon is clear. It was a motor vehicle accident case and it's clearly stated that all the facts and circumstances surrounding late notice in a motor vehicle case must be examined. I disagree that Lavorsi is a gap filler. I think that the Supreme Court is clear in both Simmon and Lavorsi that, specifically in Simmon, that in motor vehicle cases, you have to look to all the facts and circumstances to determine whether notice was reasonable or unreasonable. If it was unreasonable, then it would be deemed a material breach and the insurer would be alleviated of his obligations under the policy. But I don't think that you can expect millions of people owning motor vehicles getting minimum policies that they do not read or negotiate because they are compelled to do so by law. I think that there needs to be more grace given the public policy considerations and the mandate why they have to get motor vehicle insurance. So, I disagree that it's just because it's unambiguous and it's 30 days that the court can't look beyond that and apply the Simmon rule, which has become known as the Simmon rule, or the Lavorsi factors because Lavorsi more defined the Simmon rule. That's my fundamental argument that notice provisions in motor vehicle policies, in particular, must be examined to determine whether there's a reasonable or unreasonable performance by the insured and then factor in whether there was prejudice to the insurer. Here, there definitely was not. They got the complaint immediately after the statute ran through the cars. You couldn't examine the cars, but the cars were totaled anyhow. And really, the issue was the personal injuries to the passenger. So, I don't see he didn't argue that there were prejudice. They participated in the underlying discovery and the underlying personal injury case. They filed the deck action. There was no default judgments entered. They were in no way prejudiced. And given the unsophistication and the complications in this case, I think that all the facts and circumstances lead to the fact that the notice was reasonable under the circumstances and there was no prejudice to the insurer. And therefore, I request that summary judgment be reversed. Thank you, Ms. Rupp. Any questions for Ms. Rupp? No. Hearing none, Justice Hyman? No? Okay, fine. In that case, I'd like to thank you both for your excellent oral argument and your briefs. We will take them all under consideration and enter an order of judgment in due time.